May it please the Court. I'm Steve... You have 20 minutes for both cases, right? That's correct, Your Honor. You can take them up together or separately, but... Very well, Your Honor. Thank you. Steve Mosier, representing Plaintiff Appellants Sun Earth and the Solar Ray Corporation. With me is Clark Proffitt. I wish to reserve four minutes of my time for rebuttal. The first issue, the amended permanent injunction... Can you point that microphone to your mouth? There we go. Thank you, Your Honor. The amended permanent injunctions carve out, set forth in Sections 1A and 1B, permitting defendants' ongoing use of the Sun Earth trade name, quote, to the minimum extent necessary as required by law or ordinary business customs, is inherently indefinite, vague, ambiguous, and violates Rule 65D. I have no trouble understanding it. I have no difficulty understanding it. What's indefinite, vague, or anything else about it? It says if you need to use the name to get your thing through customs, you can use it, and no more than that. Ordinary business customs is not a term that a person of ordinary understanding would have an ability to appreciate what conduct is in and what conduct is without the scope of the injunction. So could I stop you there? It sounds like you're not complaining about minimum extent necessary. Is that right? Actually, the objection is to the minimum extent necessary as required by law or ordinary business customs. The objection is to that entire... I know that, but I'm trying to narrow down. I think there's three parts to that. There's the minimum extent necessary, there's the as required by law, and your response to Judge Kaczynski's question was that it seemed to focus on ordinary business customs. Okay. The required by law component is also objectionable because basically it incorporates the statutory law into the injunction. But as required by law is objectively verifiable. The law does or doesn't require use of the name in certain circumstances. It doesn't specify what law. As required by... But it's objectively verifiable. It seems to me that your argument is ordinary business customs. Isn't that the problem? That's the essence of the problem, but it's only magnified by the rest of the language. To the minimum extent necessary as required by ordinary business customs... But it's ordinary business customs to operate within the United States. That was the problem. The opposing counsel, opposing party came in and said, look, the injunction is too broad. We can't import, we can't do business. And so Judge Wilkins trying to get at that. And I, you know, at some point it's pretty tough to draft an injunction. I've done it. And so I'm trying to figure out what more, what should she have said here? Well, in order, well, she was required by Rule 65 to create an injunction, including carve-outs that would be understandable by the ordinary person with reference to the document itself. Right. I'll grant you that. So what should this have said, sir? We believe that the carve-out in the entirety is incapable of understanding the ordinary business customs in particular. That's your conclusion again. So could you, is there, do you have language you think she should have used? In substitution of this, no, Your Honor. We're really not able to... Why do you have standing to raise that argument? We objected to it in documents. I know you objected to it, but so what? They might have standing to it by saying, look, we're subject to an injunction and we don't know what we can do, what we can't do. But in your case, they do or don't do it. If you think they are violating an injunction, you go to court and the judge says yes or no. There's no notice problem. So why do you have a standing to raise this kind of argument anyway? The carve-out is for, ostensibly, the benefit of the party whose right is being protected. Right. And you watch them do something. If you think they are violating an injunction, you just haul them to court and have the judge adjudicate it. There's no notice problem. You don't have a notice problem. And the litigation, Your Honor, with our respect, would be with respect to people coming in and telling the court what they think is ordinary business customs, which, by the way, is a variable standard and may change over time. They might have an objection to that in saying, look, you are exposing us to possible contempt based on a standard we can't understand or apply. We have to come into court and find out from the court are we in contempt or not. So they can have, I mean, I can see why they might object to it, but why do you have standing to object to it? When our right is proof, is dependent upon proof of a standard that's unenforceable, our right is what is being No, it's enforceable. You can bring an enforcement action and bring proof, and then you either win or lose. I don't see what's skin off your nose. It seems to me that if you bring me the vaguer and the broader the injunction is, the more your client benefits. A vague injunction creates all sorts of uncertainties for the other side in deciding whether or not to follow it. But I can't see what causes you any problems. We believe that we're harmed directly by a carve-out that essentially disables us from effective enforcement of what is ostensibly our right. I'm sorry, just explain it to me, just in plain English. You see something that you think is covered by the injunction, but you are not sure, right? You are uncertain because the injunction is vague. What prevents you from just bringing an enforcement action and finding out? You're not a subject of a sensuous litigant order, are you? No, Your Honor. As Alaska. Just checking. If we You can bring an action. You can go to the court and find out. This is not, you don't have to operate in the dark. You think they're violating it, bam, you go and judge will commit your service. It's a very expensive proposition to bring a contempt proceeding. We've gone through it and it's very difficult. Counsel, you don't want the carve-out at all, do you? Pardon? You don't want the carve-out at all. No, Your Honor, we're That would be a different kind of argument, wouldn't it? That's the second argument, yes. I think you'd have to argue that that's an abuse of discretion. Not that it's vague. Yeah. Well, the indefiniteness of the language, we believe, is a question of law, particularly the ordinary business section. I understand. But that's why Judge Christen was asking you, what language would you substitute? She wasn't giving you the option of doing away with the language entirely. She was asking you what would be more definite here. On this record, that carve-out, those carve-outs are not supported, not supported factually. What the record says is that they're — that the continued use of the trade name causes a likelihood of confusion in the marketplace and is confusing to consumers. That's what the record says. So the record does not support the carve-out at all. That's essentially the second argument. I understand that. The second argument raised on appeal is that the Court, by allowing the continuation of the use of the trade name in an infringing way that violates both Federal law, the importation provision of 1124, and the California statute granting exclusivity to a trade name, that the Court affirmatively allowing the continued use of the trade name in violation of substantive Federal and State law, essentially what it does is it grants a perpetual compulsory license from the plaintiff to the defendant, royalty-free. It doesn't. It doesn't. She says to the minimum extent necessary. I mean, your team won. We don't feel like we won because we have an injunctive order that ostensibly grants us a remedy, but effectively does not. Effectively — But this is the part that's so paradoxical to me, at least on my scorecard. You want us to put a finer point on this injunctive remedy. So you want them enjoined less, more specifically. It shrinks the order. No. Actually striking the carve-outs of A, B, and C leaves paragraph 1 in place, and it creates an absolute prohibition on the name. Now you're back to saying there should be no carve-out whatsoever. Right. Right. Well, if that's your argument, then you've been wasting the last 9, 10 minutes arguing that it's too vague, right? If you just want to say it shouldn't be there at all, we should talk about that. But you've been arguing a different point. Yeah. For purposes of that point, you have to assume there is a carve-out. Okay. Otherwise, you're chasing two rabbits. Well, we think that the same relief is required under the first argument and the second argument, that the carve-out in its own No, not at all. The answer to the first argument, where we're to agree with you, is, okay, so give us a more specific language that would work for you. Yeah. And by the way, I didn't hear any more specific language. So if you want to offer it to me, this would be the last chance. No, Your Honor. We do not have more specific language. And the reason we do not is because it would not be supported under this record, particularly insofar as it would result in continued use of the trade name, essentially a continued right to continue to infringe. Turning to the carve-out of 1A and 1B permits the trade name usage, notwithstanding the likelihood of confusion. There's no subsidiary findings that the use of the trade name to the minimum extent necessary as required by law or ordinary business customs would alleviate the likelihood of confusion. The record is missing on that. All that the record says is that the continuation of the use of the trade name is likely to cause confusion in the market. The exceptions stated in the opinion are based on considerations of equity, but without support in the underlying factual findings. The district courts has expressly permitted conduct that is rendered unlawful by Federal and California law. And the Court did so without addressing the issue of the conflict of the California statute and the 1124. The point I have is you're basically trying to keep them from importing at all. Under the infringing trade name, which is what the findings of fact say, and finding a likelihood of confusion by continuing the use of the trade name. As I understand it, they're the manufacturer and they have to use the name in disclosing to customs who the manufacturer is. They have to use a name, Your Honor. Yes, that's what the record says. They used a different name up until 2011. They changed their name. They have a United States subsidiary through whom they could import these goods. They were doing that until January of 2011 under the name Ningbo Solar in China. And there's also Ningbo Solar Electric, their U.S. subsidiary. They could do that now or they could private label, private brand label as they themselves did in 2010. But, counsel, the district court heard all the evidence about that and she eyeballed the witness and she assessed credibility about what the motive was for, motivation was for using the name and changing the name and whatnot. Why would we revisit that? This is not a question of intent. She found them credible. Sorry. Forgive me. I didn't mean to interrupt you, but she found them credible in their – in the reason that they were labeling, the way they were labeling, because they had used the name earlier as well, right, for a number of years. Yeah. This is not an issue of intent, Your Honor. As to the second argument here, this is a – this is an issue of they, in fact, on this record, imported goods into the United States under the Ningbo name earlier. They, in fact, at the time of trial, were importing goods under a private brand labeling. They could do that now if they wanted to. They own – the record reflects clearly the reason they don't want to do that is simply because they don't want to do that. The question of intent is not an issue. The question of what they were doing is an issue. But you're misstating the record, I think. What she found, what she heard, certainly, and she found credible is testimony that they had a different reason for wanting to do that. They were using this name when they wanted to go to a worldwide market and use the same name. She heard that, right? Right. Right. She did hear that, but what she did and what this injunction does, by allowing continuing infringing use, what this injunction does is allow a continuation of a likelihood of confusion. The issue is not intent. The issue is are there findings of fact in the record that supports the ongoing infringing use of our trade name? So I'll get out of your way on this in a minute, but – or in just a second. But it seems to me that all of these arguments lead to the same – they're all roads to the same place, which is you want no likelihood of confusion, which means you want no use of the name. Well, in view of the Court's findings of a likelihood of confusion and no other factual findings that support ongoing trade name usage, yes, we want no continuing infringement. And by the way, that's what the injunctive statute says as well. The courts are – have the power to grant injunctions according to the principles of equity and upon terms as may be deemed reasonable, dot, dot, dot, to prevent a violation under 125 – 1125. That's the purpose for which the Court is to issue its injunctive power. These goods come in the United States and they use the name. When they come out of customs, do they have the name on them? Are they displayed to the public? Are they – where does the name appear? Well, the name – right now what the defendants are doing is they're putting their nameplate with the sun earth infringing mark right directly on the product. There is an obligation to identify the manufacturer, but they could identify the manufacturer as their wholly owned subsidiary. Are there private brand labeling that they also do? So they have a wide variety of options and so do we, frankly. We've private brand labeled some of our goods as well. I don't think you answered my question. They put a label on the product and it comes out of customs, it has the label on it? That's what they're doing right now, yes. Sorry? Yes, that's what the defendants are doing right now. It has the sun earth infringing trade name on the back of each panel on the product, yes. I'm sorry, and the infringement is the use of the symbol or is it the use of the name? The use of the name. The name. Solar power. Yeah. The sun earth – their trade name incorporates a part of our trade name and is confusingly similar. That's what the trial court found. That's a very, very small print. It's kind of down at the bottom and it's all accompanied by identifying that it's all manufactured in China. That's the label I saw. Is there something different? Yeah. That is, in fact, the label, yes. But there's no subsidiary finding that the use – the ongoing use of the trade name – it also has many other implications, but there's no subsidiary finding in this record that that use will not cause the likelihood of confusion. In fact, the record says that it will. It says that ongoing trade name usage by the defendant will cause the likelihood of confusion in the market. That's what – that's the posture in which the case comes to the court. It was hard for me to get an idea as to how big this label is. How big is it? I believe it's approximately this size. The bottom portion is what identifies the – Four by six? Two by three? Four by six, I think, is a better estimate, Your Honor. This is the one that appears on the panels. How large are those panels? I can't tell from the picture. I don't have – The panels are pretty good size. I'm uncertain, Your Honor, frankly. There's a decent size. Is there some reason the name has to stay after it comes out of customs? Have you challenged leaving the name on there when it comes out of customs? I can see going in it has to identify where they come from. But have you challenged putting it on the product as it comes out of customs? Well, Your Honor, the court's injunctive order says defendant shall be permitted to use the – infringing the name to the minimum extent necessary as required by law. That's essentially the essence of our argument here, is that the court's injunctive order explicitly allows conduct that's explicitly found to cause a likelihood of confusion on our factual record. Counsel, I'm looking at ER 81. Is this the label that's currently being used or was being used at the time of the court ruled? That was the label that was substituted on the day of the hearing on the third motion for contempt. Yes. In my understanding, that's continued to be used today. Yes. Okay. So it's the symbol. It says NB Solar. And then the lower half says NB Solar. And I have to look – to get to SunEarth at the very bottom, manufactured by SunEarth Solar. Is that right? That is correct. And we're looking at about six-point font at best? I believe – I'm not sure of the exact font size. But it's relatively small, Your Honor. But it also – That's the only place it appears. It's just that one place that says manufactured by SunEarth Solar Power Company Limited. On the back of every single solar panel that's imported into the United States, that's correct. Well, and in fairness, it's probably on the – it's on the packaging, too, I think. Right? True. All right. So the – And I'm sorry. Have you challenged – I can see identifying it going in, but have you challenged the fact that this continues to have a certification coming out of customs? We have – we had no registered mark at the time. We do have a registered mark now. No, we have not – we have not filed suit under the customs statutes. We should not be obligated to do so. No, no. I meant challenge it as violating the injunction. I mean, there's nothing in the injunction that I see that says these things have to come out of customs with this label. Well, Your Honor, that was the third – the essence of the – that was the entirety of the third motion for contempt is we were challenging – well, we were challenging at the time a conspicuous use. It went to an inconspicuous use, but the Court specifically overruled our third motion for contempt and effectively blessed this particular label, notwithstanding the – and at the time, the Court had not entered a permanent injunction. True. But the Court now has, but we've already litigated and lost contempt on that very label. The question of whether they can take it out of customs with this label, you've litigated that question? No. No, Your Honor, we did not. Why are you here? I mean, it seems to me that's your problem. If there's nothing in the injunction that says they can take it out of customs with this label, it just says it has to be therein. I mean, they could – a court could require them to take every one of these labels and cut out the name every time after it gets through customs. Have you tried – have you tried asking the Court for that relief? Well, we're here – Not well. Yes or no? Have you asked for this relief? No. No, Your Honor. Well, why are you here? Why aren't you in the district court saying, look, fine, you get into customs, no problem, but once it leaves customs – it's not like saying made in China, identifying the place of origin is required by law. You have to have – if I remember my trade law correctly from my many days of practice, you have to be able – you have to leave identification of the country of origin if it's not made in the United States. That you can't remove. But there's nothing that says that this label has to stay on the product when it's introduced in the stream of commerce here. If you think this violates the injunction, you should go back into the district court and say make him take off the label and make him take off as much of the label as displaced on earth. Your Honor, respectfully – You haven't done that, have you? Respectfully, there is a difficulty under Rule 11 for us to go back to the court and object to the very same label that we've already litigated and lost. I have a concern about that personally. Well, I don't understand why. I mean, the injunction talks about what you need to get something through customs. It seems to say nothing at all about what happens when you leave customs. And if they are still having something on the product that violates the terms of injunction that is not necessary to get the thing through customs, then you need to go back to district court and argue that. And then we'll see what the district court does, and so we can – We already specifically raised both the California statute and the customs consideration with respect to the ongoing trade name usage. Did you argue that the label ought not to be there once it clears customs? Did you argue that that is a contempt? No. Then you're out of luck. It seems to me you just made the wrong argument. You need to go back to district court and argue that because I see nothing in the injunction that allows them to take this out of customs and put it in the stream of commerce with this label on it. There's nothing unclear about it. It seems pretty clear to me that that's not allowed. If you haven't asked for that relief, then you have yourself to blame. Thank you, Your Honor. And you're out of time. Thank you, Your Honor. Thank you. May it please the Court, James Foster for the Chinese Sun-Earth. Is there any reason why this label has to be on there after it clears customs? Yes, Your Honor. There are several, which were factual records made before in district court. There were three reasons, customs being only one. The other two reasons were that the State didn't qualify for certain customs. I didn't hear you. Can you hear me, Your Honor? No. You keep talking. I'm sorry. Start again. What are the three reasons? There were two theories besides customs, Your Honor. The first was that the State of California gives certain tax credits, and in order to qualify for the tax credits, they send inspectors around to look at the units to see who the manufacturer was. And it's on the label. They send them around to where? Excuse me? They send them around to where? To where the people who apply for the tax credits are the people who buy the panels. My understanding, I don't live in California, but the record is that the State of California then sends inspectors around to verify that the panels were. Does the injunction permit a label for purposes of gaining tax credits? I thought it was only for purposes of clearing customs. No. Actually, I'm trying to find my notes here. Summarize them here. Counsel, I have the — maybe, I think you're going right to one of my questions. Her findings at page 45 said for the United States Customs and Border Patrol for purposes of tariff charges. Yeah. And then it said to other government entities such as the California Energy Commission. That's right. So customers will be eligible for financial incentives and tax credits, which I think is Judge Kuczynski's point. And then three, to end customers for warranty purposes. That's correct. Okay. So my problem — I can understand that list. I understand that list. But I think opposing counsel's argument is that Rule 65 requires specificity. And the way that the injunction is written, it says, as required by law to do business in the United States. That's objectively verifiable. Okay. But it also says ordinary business as required by ordinary business customs operate within the United States. And so what's the answer to opposing counsel's question that I would have to go to look at page 45 to sort of put that in context? Is there a problem there on vagueness grounds? I guess the problem I'm having with the question, Your Honor, is that this particular label was in front of the judge. Yep. And when she drafted the language, it was intended to allow the use of this label. And so I appreciate Judge Kuczynski trying to help my opponent. But if this case goes back to this judge, if she's passing on this label, she's already passed on it. And she drafted this language to allow us to use this label. Right. But I think there is an argument to be made that there's some squishiness in this ordinary business customs, whatever is necessary, the minimum necessary as required by ordinary business custom to operate within the United States. And I found myself going back to look at, as I said, page 45 to figure out the context in which she was placing that. Now, it is important to me that opposing counsel can't tell me how this language should have been drafted any more specifically. And that's certainly very challenging to do. But, you see, the problem is we're having this conversation about, is it on the label? Does it have to be on the panel? Do the panels have to be – are they subject to inspection by these inspectors? And we don't get that from the face of the injunction. Your Honor, respectfully, this is what district courts are for, to hear people testify about what's necessary, how to do this. Right. But the rule is the rule. And the rule says it has to be – we have to be able to determine the scope of the injunction from the face of the injunction, not by looking at the moving papers. I don't have any problem with the scope of this injunction when I look at the moving papers or the judge's findings. Right. But would you like to speak to this point? I think it's his strongest point, which is that it's, you know, arguably necessary to do that in order to place this in context. I mean, is it really just about importing goods? You know, it's not. But it's certainly possible to read it that way at first glance. Well, as I said, on the factual record below, there were three instances, three reasons why this label had to be there and had to have this particular reference to the manufacturer, not just importing. And the judge – Why couldn't this be just put in the paperwork so that when they come around and inspect it, you look at the paperwork, and the paperwork discloses the source? Your Honor, I'm being monotonous, but that's an argument that would have had to have been made in the district court, and if it had been made, we would have been able to rebut it. Was it made in district court? No. Okay, so the – but there's a record that shows these inspectors come around for tax credits and whatnot, and they have to see – To verify, yeah. Right. To see the sticker, and I think to see that the equipment is actually installed. Is that right? Right. And to make sure that the manufacturer is the same one. My understanding is when you fill out the request for a tax credit, you list the manufacturer of the solar panel, and the inspector checks to make sure that the solar panels you bought that you installed are the same ones that you had – that you had applied for credits for. Right, but your client was the one who wanted the exception, and so I guess the question that I have is the one Judge Kuczynski is asking, which is, is there some record that tells us it wouldn't have been sufficient for the owner of the panel to say, here's my paperwork? I don't know what – I don't know what the State inspectors would accept. The – I understand the evidence is that you have to have it on the panel so that they can check it. But, again, you're in appellate court, and there's a district court, and they have to bring forward evidence, and they didn't do it. We were spotting – What has to be on the panel? The sun, earth has to be on the panel? I couldn't hear you, Your Honor. I'm sorry. What has to be on the panel to pass inspection? Does sun, earth have to be on the panel? My understanding – well, if sun, earth is – Sun Earth Solar Power Co. – oh, by the way, on page 5 of our brief, this is the actual size of the label. I know Judge Pipey asked it. And on page – we were careful to make this a precise size. And on page 6 – I'm sorry. Page 5 of your brief? Page 5 of Appellee's brief, yes. That's the exact size. And you're right, Your Honor, that it's a very small type at the bottom. And if page 6 is a picture of the actual solar panel – and this is not the exact size, obviously, but from – How tall is that panel? Yeah, I'd say that's about 5 feet, 5 feet by 3. I've seen appellees, and they're about like this. So in order to pass inspection, it has to say sun, earth, solar power? Well, it has to have the name of the manufacturer, is what the evidence was. The other issue is the warranty coverage. Again, the evidence was that a purchaser gets a warranty for 10 years from the manufacturer, and a couple years into it, he may forget who the manufacturer was because he might have bought it from somebody else. And so it's necessary as a business matter to have the name of the manufacturer on the label. So five years into it, the person goes out and says, well, who is this? Oh, it's sun, earth, solar power. This is what the trial court heard and decided. So getting back – What about attorney's fees? Would you like to speak to attorney's fees? Excuse me? Would you like to speak to attorney's fees? Yes, I would. Again, Judge Wilkin wrote a 60-page opinion summarizing the case. It didn't have the benefit of the Supreme Court's decision. Yes, and that was – wrote down the case. The Supreme Court recently held that the standard of review has changed for attorney's fees. And now it's, I think, clear error or abuse of discretion. It's not de novo any longer. And so an appellate court would – Well, that would be the standard of review. But that's not the standard that the district court is supposed to use in the first instance. That's correct. Exceptional case standard, I believe, is the language that they use in the Supreme Court petition. Didn't they change it at least by implication under octane fitness to the totality of the circumstances? That's correct. That lowers the bar. It makes it easier for the other guys to get fees, right? That has been the general comment on octane fitness. The debate in the profession has been how much it lowered it. So why shouldn't we send this back to Judge Wilkin? Well, because the standard has changed. Yeah. Seems like a pretty good reason, doesn't it? Well, they didn't make that argument. But apart from that, I – Well, they didn't make the argument. They didn't have the case at the time. Right. They were bound by our prior decisions, which now appear to be inconsistent with what the Supreme Court has said. Law changes. The law changes. I – this Court can make the decision on this record whether it's close enough to send it back for another interpretation by Judge Wilkin, although I think the result is foreordained by reading the entirety of her opinion. She had many reasons why she said this was not an exceptional case. The standard that we had adopted previously was quite a bit more strict than the totality of the circumstances. The Court lowered the bar quite a bit in determining what constitutes an exceptional case for the Court of Attorney's fees. Right. So – and the case is not over. I realize they didn't make the argument, but they couldn't have made the argument. Judge Wilkin would have said that's a trivial argument because the Ninth Circuit has said what the standard is. And until the Supreme Court changes that or the Ninth Circuit changes it, that's what the standard is. I appreciate your point, Judge Bivey. All I can say to you is that you sit in the appellate court and there are a lot of attorney's fees that are going to come up in front of you. You can send them all back for re-evaluation, and maybe you should in a close case. I can only ask you to read Judge Wilkin's opinion and see if it's close enough to make it worthy sending back on that issue. She was – point after point after point was consistently against the argument she had made, and it really is a stacked deck. But if you want to send it back for re-evaluation, of course, you can do that. I'm willing to take any other questions, but I don't have any compulsion to use my entire 20 minutes. Okay. Thank you. You're out of time, but if you want to take a minute for rebuttal, you may take it. Thank you very much, Your Honor. We're asking the Court to adopt Octane, the fitness standard, and we respectfully ask the Court to – the Court has a complete factual record on to make a – on which to make a determination of exceptionality. The record is closed. This is a – this was a trial to the Court. The Court found that defendants knowingly adopted the name and mark in the United States beginning of 2011 with knowledge of our senior rights. The Court found that six separate misrepresentations were made on material issues and material facts during the course of the proceeding. And the Court recited that and agreed that that had happened. Under the new standard, we believe that this Court can and should reach a determination of exceptionality. If the Court believes, based on this record, that either we are or are not entitled to attorney's fees, we respectfully believe that this Court should so say so. And we ask that the Court do so. There was a specific finding of bad faith by the defendant that the Court overlooked and did not consider as a part of the determination of exceptionality, and that's with respect to the registration of the sun-earth.us domain name. The Court – the trial court specifically found that was registered in bad faith in 2010. So if we decide to send this back, you'll have an opportunity to argue that before Judge Wilkin, right? Absolutely, Your Honor. Okay. The four separate violations of the injunctive orders, in addition to the other points that I previously made, we believe require a determination of exceptionality under the Court's new standard – under the Supreme Court's new standard in octane fitness. Four separate acts of – three found in contempt, a fourth found in violation of the statute, but the Court did not award sanctions. But the combination of those activities under the totality of the circumstances justifies a finding of exceptionality. And in fact, we believe that any finding other than exceptionality on this record under the new standard would be an abuse of discretion. Thank you very much, Your Honor. This argument stands submitted. We are adjourned.
judges: Kozinski, Bybee, Christen